IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS,
HOUSTON DIVISION

| | | |
|---|---|---|
| JRG CAPITAL INVESTORS I, LLC, | § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:11-CV-03299 |
| MAURICE DOPPELT, | § § | |
| Defendant. | § § | |

# DEFENDANT'S SUR-REPLY IN OPPOSITION TO
# JRG CAPITAL INVESTORS I, LLC'S MOTION FOR FINAL SUMMARY JUDGMENT

## TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

COMES NOW, Defendant Maurice Doppelt ("Doppelt" or "Defendant"), and submits this, his Sur-Reply in Opposition to JRG Capital Investors I, LLC's Motion for Final Summary Judgment. This Sur-Reply is necessary because Plaintiff filed its Motion for Final Summary Judgment prior to the commencement of discovery and far in advance of the time to designate expert witnesses. This Sur-Reply is being filed by agreement. Doppelt states as follows:

### PREFACE

1.  For perspective on this lawsuit, Doppelt provides a chronology of events:

    - On or about January 26, 2007, Citibank, N.A. ("Citibank") and 839 East 19th Street, LP ("839") entered into a loan agreement whereby Citibank loaned 839 $5,040,000 for the purchase of the Mesa Ridge Apartments, real property located at 8000 Creekbend Drive, Houston, Texas 77071 (the "Property"). Loan Documents included a Promissory Note (the "Note"); Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Deed of Trust"); and Absolute Assignment of Rents and of Landlord's Interest in Leases (collectively, the "Loan Documents"). The Note was non-recourse to 839, but for twelve (12) specific exceptions listed in Section 20(B).

- Also on or about January 26, 2007, as part of the Loan Documents, Doppelt signed a Guaranty of Borrower's Recourse Obligations.

- On September 13, 2008, Hurricane Ike struck the Houston area, causing extensive damage to the Property. 839 was not properly reimbursed by its insurance provider, Lexington Insurance Company ("Lexington"), so it filed a lawsuit against Lexington to recover its damages ("Hurricane Ike insurance proceeds").[1]

- Subsequent to Hurricane Ike, three separate fires destroyed two of the buildings at the Property. 839 submitted insurance claims for fire damage, and 839's insurance carrier paid approximately $730,000 in proceeds (the "Fire Insurance Proceeds") to Citibank. The Deed of Trust provided four specific manners in which the Fire Insurance Proceeds must be disbursed, including: (i) as a credit to 839's indebtedness, (ii) as funds with which Citibank (or 839 at Citibank's discretion) could repair the Property, (iii) as direct reimbursement to 839, or (iv) divided by Citibank among these options. Citibank elected to disregard its four options and simply keep the proceeds for itself, forming the basis of pending litigation between 839 and Citibank.[2]

- 839 planned to use the Hurricane Ike insurance proceeds and the Fire Insurance Proceeds to repair the Property and continue operations. Per Citibank's request, 839 developed a plan for repairing the Property (the "Repair Plan") which would use a combination of new personal monies from 839 and escrowed fire insurance proceeds. 839 submitted the Repair Plan to Citibank on May 17, 2010, but Citibank rejected the Repair Plan based in part on its misreading that Citibank would be required to release Fire Insurance Proceeds for the first phase of repairs. The Repair Plan actually called for 839 to supply new cash for the first phase.

- On May 26, 2010, before 839 could modify the Repair Plan, Citibank and Plaintiff JRG Capital Investors I, LLC ("JRG" or "Plaintiff") executed a Note

---

[1] *839 East 19th Street, LP v. Lexington Ins. Co.*, U.S. District Court for the Southern District of Texas, Houston Division, Civil Action No. 4:10-CV-01181. A March 21, 2012 order held that Lexington's policy limits have been exhausted, but both 839 and JRG continue to actively pursue Hurricane Ike insurance proceeds via reinsurance.

[2] *839 East 19th Street, LP v. Citibank, N.A.*, U.S. District Court for the Northern District of Texas, Dallas Division, Civil Action No. 3:11-CV-1238-M (for breach of contract which resulted in wrongful acceleration, loss of equity, and loss of future profits).

**DEFENDANT'S SUR-REPLY IN OPPOSITION TO JRG CAPITAL INVESTORS I, LLC'S MOTION FOR FINAL SUMMARY JUDGMENT - Page 2**

Purchase Agreement. Citibank transferred its interests in the Loan Documents to JRG for $1,650,000, the amount at which JRG valued the underlying asset.[3] Citibank kept all escrowed and future Fire Insurance Proceeds and retained the rights to fifty-percent (50%) of any future proceeds JRG obtains from Doppelt (this matter) and fifty-percent (50%) of all future Hurricane Ike insurance proceeds. The Note Purchase Agreement also required that one-hundred percent (100%) of all future insurance (both fire and Hurricane Ike) proceeds be credited against 839's outstanding indebtedness – and thus to JRG's claim herein. The Note Purchase Agreement also mandated that JRG could not bid higher than the purchase price ($1,650,000) at a future foreclosure sale, unless outbid by a third party, so as to maximize the deficiency. The Note Purchase Agreement closed as of June 4, 2010.

- On June 11, 2010, JRG informed 839 that it had purchased the Loan Documents and would be initiating foreclosure.

- On July 6, 2010, JRG sold the Property back to itself at foreclosure for $1,650,000, the same amount it had paid Citibank for the Loan Documents and the same value JRG had given to the underlying asset.

- On August 18, 2011, JRG filed Plaintiff's Verified Original Petition on Sworn Account in the state district court of Harris County, Texas, asserting that Doppelt had provided an unconditional guaranty of the Note's entire deficiency, and that the deficiency was calculated by JRG to be $3,525,273.01.[4]

- On September 7, 2011, Doppelt removed the lawsuit to this Court based on complete diversity jurisdiction.

- On September 8, 2011, Doppelt filed a Rule 12(b) motion to dismiss the lawsuit for failure to state a claim. This motion was denied on October 27, 2011.

---

[3] (Winograd Dep. 44:19-21, Mar. 26, 2012) (in response to question of why the Note Purchase Agreement required JRG to bid $1,650,000 at foreclosure sale unless out-bid, Winograd responded "...**that's the value of the asset the day we bought it.**") (attached hereto as Exhibit "A").

[4] JRG filed an Amended Complaint on December 12, 2011, in which the specific damage amount was replaced with "damages in excess of the jurisdictional limits of this court" language. (P's Amended Complaint, p. 3, ¶ 17). JRG's Motion for Final Summary Judgment first supplied the now-alleged amount of $2,901,047.20. (P's MSJ, p. 4, ¶ 15).

**DEFENDANT'S SUR-REPLY IN OPPOSITION TO JRG CAPITAL INVESTORS I, LLC'S**
**MOTION FOR FINAL SUMMARY JUDGMENT - Page 3**

- On November 3, 2011, Doppelt filed a motion for reconsideration of the Court's order denying his Rule 12(b)(6) motion, which was denied on November 21, 2011.

- On December 1, 2011, JRG filed its Motion for Final Summary Judgment ("MSJ"), which is the subject of this sur-reply. Other pending motions include Doppelt's Motion to Dismiss for Failure to Join a Necessary and Indispensable Party (Citibank) and Doppelt's Motion for Summary Judgment based on premature damages, since any forthcoming recovery of Hurricane Ike insurance proceeds must be applied to 839's outstanding indebtedness, thereby reducing JRG's purported deficiency.

## SUMMARY JUDGMENT STANDARD

2. To be granted its MSJ, JRG must prove that there is "no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[5] These heavy burdens are JRG's alone.

3. Doppelt is not required to prove his case as a matter of law.[6] In stark contrast to his Rule 12(b)(6) motion to dismiss, which required Doppelt to prove that JRG had not stated a legally cognizable claim, Doppelt defeats JRG's MSJ by simply showing that, with all evidence viewed in the light most favorable to Doppelt, **any material fact issue remains**. Each and every one of the following grounds would independently serve as a basis to deny the MSJ; collectively, the evidence is overwhelming.

---

[5] FED. R. CIV. P. 56(a).
[6] In Doppelt's response in opposition to JRG's MSJ, Doppelt performed comparative analyses of JRG's and Doppelt's interpretations of the Guaranty. Doppelt showed why JRG's proposed interpretations are uniformly unreasonable and that the Guaranty does *not* cover 839's non-recourse obligations from the Note. However, even if Doppelt has only shown that the Guaranty is ambiguous, JRG's MSJ cannot be granted. **The meaning of an ambiguous contract is a question of fact.** *Suzlon Wind Energy Corp.*, 662 F. Supp. 2d 623, 645 (S.D. Tex. 2009) (citing *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1980)).

## NEW GROUNDS FOR DENIAL – CITIBANK'S DEMAND LETTER

4. Through discovery received from Citibank on January 26, 2012, Doppelt has obtained Citibank's demand letter from January 28, 2010. This letter, sent by Citibank through its attorney, formally established the specific violations for which Doppelt may be pursued as guarantor:

> "**The Guarantor is obligated to pay all or the applicable portion of the Indebtedness *upon the occurrence of certain specified events* pursuant to the terms of [the Guaranty].**"[7]

The "certain specified events" language unquestionably referred to the exceptions from Section 20(B) of the Note, which are incorporated on the front page of the Guaranty. Accordingly, in its demand letter to 839, JRG's predecessor-in-interest asserted that Doppelt is only obligated upon and to the extent of a violation of the exceptions from Section 20(B) of the Note.

5. JRG's current demand – for the entire deficiency with no regard for Section 20(B)'s exceptions – is contradictory to Citibank's demand, which correctly asserted that Doppelt only guaranteed the Section 20(B) exceptions from the Note. Doppelt must not be held personally liable for JRG's alleged damages.

## NEW GROUNDS FOR DENIAL – EXPERT WITNESS INTERPRETATION

6. Doppelt has retained Randall S. James, former Commissioner of the Texas Department of Banking, as an expert witness on the interpretation and enforcement of the Note and the Guaranty. In Mr. James' opinion, the Note and the Guaranty demonstrate that Doppelt has only guaranteed payment of 839's recourse obligations from the Note (i.e. Section 20(B)'s exceptions) plus the Lender's expenses from pursuing its entitled remedies from the Loan

---

[7] See page 2 of Citibank's demand letter to 839 (attached hereto as Exhibit "B").

Documents.[8] Mr. James does not read the documents as creating any liability for Doppelt as to 839's nonrecourse obligations (i.e. the entire deficiency), as sought by JRG.[9] In his deposition taken on March 26, 2012, Mr. Jerold Winograd (deposed in his individual capacity and as 30(b)(6) representative of Plaintiff) admitted that JRG has neither calculated, pled, nor presented any damages for any purported violation of Section 20(B)'s exceptions.[10]

7. Based on Mr. James' expert opinion and the pleadings, the documents read unambiguously in favor of dismissing this lawsuit in favor of Doppelt. However, *at the very least*, Mr. James' expert opinion demonstrates that fact issues remain as to the interpretation of the documents. Accordingly, JRG's MSJ must be denied.

## NEW GROUNDS FOR DENIAL – LEAVE TO SUE CITIBANK

8. On January 17, 2011, the Honorable Judge Barbara M.G. Lynn of the U.S. District Court for the Northern District of Texas heard argument on a Rule 12(b)(6) motion in the *839 v. Citibank* case, regarding Citibank's purported mishandling of the Fire Insurance Proceeds. 839's claim against Citibank for breach of contract survived the hearing.[11] Accordingly, 839 has a legally cognizable claim against Citibank for breach of contract, which then prompted wrongful acceleration of 839's debts from the Note, loss of 839's equity in the Property, and loss of future income on the Property.

9. Citibank's breach of contract is the sole cause of Doppelt's purported liability in this lawsuit. Citibank's consequent wrongful acceleration – without which 839 would still own the Property – foreseeably lead to JRG's foreclosure on the Property and all purported damages

---

[8] (James Aff. ¶ 6) (attached hereto as Exhibit "C").
[9] (James Aff. ¶ 8) (attached hereto as Exhibit "C").
[10] (Winograd Dep. 38-41, Mar. 26, 2012) (attached hereto as Exhibit "A").
[11] See Order declining to dismiss 839's breach of contract claim (attached hereto as Exhibit "D").

in this lawsuit. Accordingly, Citibank is responsible for any damages for which this Court would hold Doppelt liable.

10. In addition, it must be noted that Citibank has retained 50% of both the claim asserted by JRG herein and 50% of the claim to Hurricane Ike insurance proceeds presently being pursued by JRG. Clearly, this lawsuit necessarily involves three parties, only two of which are currently joined.

11. As shown by the Amended Joint Discovery Case Management Plan from December 1, 2011, Doppelt recognized that it may need to bring Citibank into this lawsuit as the responsible party for any damages suffered by JRG.[12] Following Judge Lynn's ruling on January 17, 2012, finding that 839 may proceed with its breach of contract claim against Citibank, Doppelt requests leave to file a claim against Citibank as the party responsible for any purported damages in this lawsuit. Alternatively, Doppelt has filed a Motion to Dismiss for Failure to Join a Necessary and Indispensable Party which should be granted.

## CALCULATION OF DAMAGES

12. In JRG's reply in support of its MSJ (the "Reply"), JRG asserts that damages are easily calculated to be $2,901,047.20 and that this amount is fixed. JRG uses the equation of "total principal amount due and owing under the Note" plus "costs as outlined in the Note" minus the "purchase price ['paid'] by JRG at the foreclosure sale."[13] JRG does not explain why purportedly straightforward damages have changed from $3,525,273.01 (in Plaintiff's Verified Original Petition on Sworn Account) to $2,901,047.20 (in JRG's MSJ) to damages "in excess of

---

[12] (Amended Joint Discovery Case Management Plan, § 6) (attached hereto as Exhibit "E").
[13] (P's MSJ Reply, p. 5, ¶ 8).

DEFENDANT'S SUR-REPLY IN OPPOSITION TO JRG CAPITAL INVESTORS I, LLC'S
MOTION FOR FINAL SUMMARY JUDGMENT - Page 7

the jurisdictional limits of this Court" (in Plaintiff's Amended Petition).[14] JRG's ever-changing valuation of their alleged damages demonstrates their uncertainty.

13.    More importantly, JRG omits an essential element from its damages equation – a credit for Hurricane Ike insurance proceeds. This forthcoming recovery has to be "applied against the outstanding indebtedness of the Loan," thereby reducing any purported deficiency.[15] The "principal amount due," and therefore JRG's alleged damages, cannot be determined.

14.    In the Reply, JRG does not dispute that any recovery of Hurricane Ike insurance proceeds must be applied to the Note's indebtedness. It is also undisputed that JRG is actively participating in the collection of these insurance proceeds. However, JRG argues that: (i) recovery of additional Hurricane Ike insurance proceeds is uncertain and (2) Doppelt can simply sue for reimbursement.[16] JRG does not provide any case law supporting these contentions, and unsupported assertions cannot prevail against summary judgment, much less establish it.[17] Moreover, case law clearly demonstrates that JRG is mistaken in its groundless assertions.[18]

---

[14] (P's Verified Original Petition, p. 3, ¶ 18); (P's MSJ, p. 4, ¶ 15); (P's Amended Complaint, p. 3, ¶ 17).
[15] (Note Purchase Agreement, Schedule 2, § 2.2).
[16] (P's MSJ Reply, p. 6, ¶ 9).
[17] *See Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *see also Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007).
[18] *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1106-07 (2d Cir. 1988) ("[A]t this time, it is impossible to determine the amount of damages that would be necessary to make plaintiff whole... As a result, the damages in this area are 'speculative' and 'unprovable'; any claim for relief based on the lost-debt injury must therefore be dismissed without prejudice."); *FL Receivables Trust 2002-A v. Bagga*, 2005 WL 563535 (E.D. Pa. Mar. 8, 2005) (Kauffman, J.) (dismissing the plaintiff's RICO claim for lack of standing because the plaintiff's alleged injury – that it had lost money due to the defendant-borrowers' failure to honor a loan agreement – was contingent on the outcome of the plaintiff's still-pending collection action against the borrowers.); *McNair v. Owens-Corning Fiberglas Corp.*, 890 F.2d 753, 756 (5th Cir. 1989) ("At the time judgment was entered, [the plaintiffs] were not entitled to the $7,200 because payment of the notes was (and presumably still is) contingent on the outcome of litigation between Porter and its insurer and between Fibreboard and its insurer.").

15. Most importantly, through the deposition of JRG's corporate representative on March 26, 2012, JRG admitted that it has neither calculated damages nor pled the proper damages as to any claims deriving from the exceptions listed in Section 20(B) of the Note.[19]

16. Summary judgment is improper because damages are premature. This Court should deny JRG's MSJ and dismiss the lawsuit based on premature damages, as proposed in Doppelt's pending Motion for Final Summary Judgment.

## RES JUDICATA

17. JRG has not refuted Doppelt's case law holding that denial of a Rule 12(b)(6) motion to dismiss does not trigger *res judicata* – because it cannot. JRG merely re-asserts that the Court's denial of Doppelt's motion to dismiss established Doppelt's liability for the entire deficiency as a matter of law. Doppelt has shown this to be patently false.[20] Although this Court did not hold that JRG had failed to state a claim upon which relief *could* be granted, the ruling certainly did not hold that JRG stated a claim upon which relief *must* be granted. The disparity between JRG's burden to overcome a 12(b)(6) motion to dismiss and JRG's burden in this MSJ is so massive that it makes JRG's reliance on the Court's denial of Defendant's motion to dismiss unreasonable.

## INTERPRETATIONS OF THE PARTIES TO THE GUARANTY

18. In the Reply, JRG asserts that Citibank's opinion at the time of the Note Purchase Agreement that the Guaranty only covered the Note's recourse obligations is "entirely irrelevant."[21] Three pages later, JRG relies on Defendant's post hoc reading of the Guaranty

---

[19] (Winograd Dep. 38-41, Mar. 26, 2012) (attached hereto as Exhibit "A").
[20] (D's Resp to MSJ, p. 8, ¶¶ 21-23).
[21] (P's MSJ Reply, p. 4, ¶ 6).

from a deposition in another lawsuit.[22] JRG cannot have it both ways. Either both interpretations by the parties to the Guaranty are relevant or both are irrelevant.

19. Furthermore, Doppelt vindicates his later misreading of the Guaranty by way of the affidavit of Nachman Borenstein, Manager of 839 and Doppelt's agent in negotiating the Loan Documents.[23] Mr. Borenstein's affidavit presents what Citibank represented to Mr. Borenstein and Doppelt as the purpose and effect of Doppelt's guarantee.

## CONTRACT INTERPRETATION

20. In Doppelt's response in opposition to JRG's MSJ (the "Response"), Doppelt cited three (3) provisions from the Guaranty which corroborate his position that the Guaranty only covers the twelve (12) exceptions from Section 20(B) of the Note plus expenses incurred pursuing theses remedies.[24] JRG has not and cannot provide alternate interpretations of these three (3) provisions.

21. Doppelt then provided side-by-side analyses of every contract provision upon which the parties disagree.[25] Although Doppelt only needs to show that a material fact issue remains to defeat the MSJ, Doppelt went well beyond this burden and explained in detail why every one of JRG's proposed interpretations is manifestly unreasonable. Based on Doppelt's analyses, this Court should dismiss the lawsuit. Alternatively, *at the absolute minimum*, Doppelt has shown that the Guaranty can be reasonably read in his favor and summary judgment must be denied.[26]

---

[22] (P's MSJ Reply, p. 7, ¶ 12).
[23] (Borenstein Aff. ¶ 5) (attached hereto as Exhibit "F").
[24] (D's Resp to MSJ, pp. 11-13, ¶¶ 32-35).
[25] (D's Resp to MSJ, pp. 13-17, ¶¶ 37-49).
[26] *Suzlon Wind Energy Corp.*, 662 F. Supp. 2d 623, 645 (S.D. Tex. 2009) ("The meaning of an ambiguous contract is a question of fact.") (citing *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1980)).

22.  JRG, the movant for summary judgment, has the burden to show that there is no genuine dispute over fact issues. This burden includes refuting all of Doppelt's alleged factual disputes.[27] Here, JRG has not met its burden for summary judgment, as ***JRG does not even attempt to refute Doppelt's interpretations or to address Doppelt's discredit of JRG's interpretations***.

23.  JRG does not argue that any of Doppelt's comparative analyses is incorrect. JRG does not argue that Doppelt's interpretations are unreasonable. JRG does not dispute Doppelt's conclusions that every one of JRG's interpretations is unreasonable. Instead, JRG dodges the issue by claiming no need to "re-hash" interpretations of the contract terms – which have not been resolved by *res judicata* or any other legal means – and again relies on two of its past interpretations – which Doppelt showed to be patently false in the Response.[28]

24.  There is simply no basis whatsoever on which the Court could conclude JRG has proved that the Guaranty language *unambiguously* reads that Doppelt is unconditionally liable for the entire deficiency.


**WHEREFORE**, Doppelt prays that JRG's Motion for Final Summary Judgment be denied, and for such other and further relief, both general and special, legal and equitable, to which they may show themselves justly entitled.

---

[27] "A party asserting that a fact cannot be… disputed must support the assertion by citing to particular parts of materials in the record… or showing that the materials cited do not establish the… presence of a genuine dispute." FED. R. CIV. P. 56(c)(1).

[28] JRG simply re-stated its same interpretations of Section 20(B) of the Note and Section 3(a) of the Guaranty. (P's MSJ Reply, pp. 6-7, ¶¶ 10-11). Doppelt showed these interpretations unreasonable and offered proper interpretations in his response to the MSJ. (D's Resp to MSJ, pp. 15-17, ¶¶ 42-49).

Respectfully submitted,

KESSLER & COLLINS, P.C.


By:   s/ Richard D. Pullman
      RICHARD D. PULLMAN
      State Bar No. 16392000

2100 Ross Avenue, Suite 750
Dallas, Texas 75201
214.379.0722 Telephone
214.373.4714 Facsimile

*ATTORNEY FOR DEFENDANT*


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via electronic filing on this 5th day of April, 2012.

J. Douglas Sutter
Charles W. Kelly
Kelly, Sutter & Kendrick, P.C.
3050 Post Oak Blvd., Suite 200
Houston, Texas 77056

                                              s/ Richard D. Pullman
                                              RICHARD D. PULLMAN