UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JRG CAPITAL INVESTORS I, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-3299 |
| | § | |
| MAURICE DOPPELT, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Pending before this Court are Defendant's Motion to Dismiss for Failure to Join a Necessary and Indispensable Party (Doc. No. 33); Plaintiff's Motion for Final Summary Judgment (Doc. No. 21); Defendant's Motion for Final Summary Judgment (Doc. No. 35); and Plaintiff's Motion to Strike and Daubert Challenge to the Expert Report and Proposed Testimony of Defendants' [sic] Expert Witness, Randall S. James ("Plaintiff's Motion to Strike") (Doc. No. 58). After considering the motions, all responses thereto, and the applicable law, the Court finds that Defendant's Motion to Dismiss must be denied, Plaintiff's Motion for Final Summary Judgment must be denied, Defendant's Motion for Final Summary Judgment must be denied, and Plaintiff's Motion to Strike must be granted.

I.  **BACKGROUND**[1]

This case concerns the extent of a guarantor's liability under a guaranty agreement governed by Texas state law. On January 2, 2007, 839 East 19th Street, LP executed a promissory note (the "Note") in the amount of $5,040,000 to CitiBank, NA ("CitiBank"). (Plaintiff's Verified Original Petition on Sworn Account ("Complaint"), Doc. No. 1-1, ¶ 7.) The

---

[1] Unless otherwise noted, the background facts of this case are not in dispute.

1

Note was collateralized by a Deed of Trust, an Assignment of Rents, a Security Agreement, and a Fixture Filing, as well as an Absolute Assignment of Rents and a Landlord's Interest in Leases, executed by 839 through its general partner, 839 East 19th Street GP Corp. (*Id.* ¶ 8.) The Defendant, Maurice Doppelt, signed a Guaranty of Borrower's Recourse Obligations (the "Guaranty") on January 26, 2007. (*Id.* ¶ 10.)

CitiBank transferred the Note to Plaintiff JRG Capital Investors, I, LLC on June 4, 2010. (*Id.* ¶¶ 12–14.) On July 6, 2010, Plaintiff foreclosed on the real property that was the subject of the loan documents. (*Id.* ¶ 15.) After foreclosure, a "substantial deficiency" was left on the Note. (*Id.*) As a result of the foreclosure, Plaintiff is now the owner of the property, and has succeeded to all rights, title and interest set forth in the Deed of Trust. (*Id.* ¶ 16.)

Section 20 of the Note, titled "Nonrecourse Provisions," contains a subsection titled "No Personal Liability," which provides that, notwithstanding certain exceptions, "Lender hereby agrees that Borrower shall not be personally liable for the payment and performance of the indebtedness and the obligations evidenced or arising under the Note, the Security Instrument, and the Loan Documents." (Note, Doc. No. 6-1.) Subsection 20(B) of the Note, titled "Exceptions," states that the non-recourse provisions of subsection 20(A) shall not "be construed to release or relieve any guarantor of any indebtedness or obligation of Borrower to Lender from full personal liability for the payment or performance of such guarantor's obligations under any guaranty now or hereinafter entered into." (*Id.*)

Additionally, section 1 of the Guaranty states that the Guarantor "absolutely, unconditionally and irrevocably guarantees and promises to Lender: (i) the prompt, complete and full payment and performance when due . . . of Borrower's Recourse Obligations; and (ii) in addition to all other amounts due hereunder, the prompt, complete and full payment, upon

2

demand, of all attorneys' fees, costs and expense." (Compl., Ex. A, Doc. No. 1-1.) Section 4(i)(i) of the Guaranty provides that the "Lender may proceed against and collect any or all of the Note (up to the Guaranteed Amount[2]) and the Guaranteed Obligations from Guarantor without first foreclosing on any real or personal property collateral pledged by Borrower." *Id.* Section 4(i)(i) also states that, if the lender forecloses on the real property collateral, it "may collect from Guarantor even if Lender, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower any sums that Guarantor pays to Lender pursuant to this Guaranty Agreement." *Id.*

## II.   LEGAL STANDARD

### A.  Motion to Dismiss under Rule 12(b)(7) and Rule 19

Under Federal Rule of Civil Procedure 12(b)(7), a defendant may move to dismiss a complaint for failure to join a party under Rule 19. Determining whether to dismiss a case for failure to join an indispensable party requires a two-step inquiry. *Hood v. City of Memphis*, 570 F.3d 625, 628-29 (5th Cir. 2009). First, a court must determine whether the party should be added under the requirements of Rule 19(a). Rule 19(a)(1) requires that a person subject to process and whose joinder will not deprive the court of subject-matter jurisdiction be joined if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. Fed. R. Civ. P. 19(a)(1). While the party advocating joinder has the initial burden of demonstrating that a missing party is necessary, after "an initial appraisal of the facts indicates that a possibly

---

[2] The Court does not find the phrase "Guaranteed Amount" to be defined anywhere in the Guaranty.

3

necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder." *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986).

Second, if the necessary party cannot be joined without destroying subject-matter jurisdiction, the court must then determine whether that person is "indispensable," that is, whether litigation can be properly pursued without the absent party. *HS Res., Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003). The factors that the district court is to consider in making this determination are laid out in Rule 19(b): (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. Fed. R. Civ. P. 19(b). "In circumstances where the litigation should not proceed without absent persons, the federal suit should be dismissed." *Pulitzer-Polster*, 784 F.2d at 1308–09.

### B. Motions for Summary Judgment

A motion for summary judgment requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. Fed. R. Civ. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).

The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id*. "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court may not make credibility determinations or weigh the evidence. *Harvill v. Westward Communications*, L.L.C., 433 F.3d 428, 436 (5th Cir. 2005). Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. Fed. R. Civ. P. 56(e)(1); *see, e.g.*, *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Additionally, any "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Interpretation of an unambiguous contract is a legal issue that may be decided on summary judgment. *Boudreaux v. Unionmutual Stock Life Ins. Co.,* of Am., 835 F.2d 121, 123 (5th Cir. 1988). "If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous. . . . If, however, the language of a policy or contract is subject to two or more reasonable interpretations, it is ambiguous." *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex. 1995) (internal citations omitted). If any ambiguity exists in a contract, "a fact issue remains regarding the parties' intent" and precludes a grant of

summary judgment. *Instone Travel Tech Marine & Offshore v. International Shipping Partners, Inc.,* 334 F.3d 423, 431 (5th Cir. 2003). "Courts are required to follow elemental rules of grammar for a reasonable application of the legal rules of construction." *Gen. Fin. Services, Inc. v. Practice Place, Inc.*, 897 S.W.2d 516, 522 (Tex. App.—Fort Worth 1995, no writ) (citation omitted); *see also Reilly v. Rangers Management, Inc.,* 727 S.W.2d 527, 529 (Tex. 1987).

### III.   ANALYSIS

#### A.  Motion to Dismiss

In his Motion to Dismiss, Defendant asserts that Citibank has a "substantial interest in any recovery from Defendant" (Mot. Dismiss ¶ 4), and thus that Plaintiff's claims should be dismissed for failure to join Citibank as a necessary and indispensable party. However, Defendant does not assert how Citibank would be necessary under Rule 19(a). Defendant argues only that Citibank has an interest in the insurance proceeds and money obtained from the guaranty. (Mot. Dismiss ¶ 2.) There are no allegations that "in [Citibank]'s absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). The Note Purchase Agreement in question (Doc. No. 33-1) also explicitly identifies the percentage of funds to which Citibank would be entitled to in the event of recovery, and there is no allegation that this litigation would impede Citibank's ability to protect this interest or put any party at risk of incurring inconsistent obligations as a result of this litigation. Fed. R. Civ. P. 19(a)(1)(B)(i)–(ii).

Moreover, even if Citibank were shown to be necessary, Defendant fails to engage in the two-step analysis identified above to show that joinder is not feasible, or analyze any of the factors under Rule 19(b). Accordingly, the Court must deny Defendant's Motion to Dismiss.

### B. Motions for Summary Judgment

#### 1. Liability

The issue that continues to divide the parties in this case is whether Defendant, as Guarantor, must bear responsibility for the Borrower's unsatisfied indebtedness. Under the terms of the Note in this case, the Borrower's debt is nonrecourse, meaning that the Borrower cannot be held liable for any unsatisfied indebtedness unless certain conditions, enumerated in section 20(B) of the Note, are satisfied. Plaintiff does not allege that any of these conditions have been satisfied.[3] Thus, if Doppelt's liability were equal to that of the Borrower, he could not be held liable for the remaining unsatisfied indebtedness.

As a general rule, the liability of a guarantor is equal to that of its principal. *Technical Consultant Serv., Inc. v. Lakewood Pipe of Texas, Inc.*, 861 F.2d 1357, 1363 (5th Cir. 1988) (interpreting Texas law). However, there is an exception to the general rule: if the guarantor agrees to it, a guaranty can impose greater liability upon the guarantor than the note imposes upon the principal. *See Resolution Trust Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1321 (5th Cir. 1992) (citing *Western Bank-Downtown v. Carline*, 757 S.W.2d 111, 114 n.7 (Tex. App.—Houston [1st Dist.] 1988, writ denied) and *Simpson v. MBank Dallas, N.A.*, 724 S.W.2d 102, 110 (Tex. App.—Dallas 1987, writ ref'd n.r.e.)).

The Court previously addressed this issue in the Order on Defendant's Motion to Dismiss (Doc. No. 10). In this Order, the Court denied Defendant's Motion, finding that the contract could be interpreted to extend liability beyond the Borrower's Recourse Obligations. However, Plaintiff is incorrect that this Order operates as *res judicata*, barring any further consideration of

---

[3] Mr. Jerold Winograd, deposed in his individual capacity and as a Rule 30(b)(6) representative of Plaintiff, alleged that various 20(B) exceptions were satisfied. (Winograd Depo., Doc. No. 57-1, at 38–41.) However, satisfaction of these exceptions has not been pled in the complaint, nor has either party discussed these exceptions at length in their briefings on the pending motions.

7

the liability issues in this case. *See United States v. Palmer,* 122 F.3d 215, 220 (5th Cir. 1997) ("[I]n civil cases a district court is not precluded by the law-of-the-case doctrine from reconsidering previous rulings on interlocutory orders such as summary judgment motions, as those rulings are not immutable and lack *res judicata* effect.") In fact, the Fifth Circuit has stated that "the law-of-the-case doctrine does not . . . set a trial court's prior rulings in stone, especially if revisiting those rulings will prevent error." *United States v. Palmer*, 122 F.3d 215, 220 (5th Cir. 1997).

The Court previously found that sections of the Guaranty and Note indicate that the Defendant's liability as Guarantor *may* exceed that of the Borrower. Section 3(b) of the Guaranty states that "[t]he obligations of Guarantor hereunder are independent of and *in addition to* the obligations of Borrower." (Guaranty, Doc. No. 1-1 (emphasis added).) Additionally, Subsection 20(B) of the Note, which delineates the exceptions to the nonrecourse provision, states that none of the nonrecourse provisions "release or relieve *any guarantor of any indebtedness* or obligation of Borrower to Lender." (Note, Doc. No. 6-1.) However, neither of these two provisions expressly obligates Guarantor to pay the deficiency remaining on the Note.

The primary difference between the parties' two positions is in the interpretation of section 1 of the Guaranty. Section 1 refers to "indebtedness," as did the guaranty at issue in the Fifth Circuit's *Resolution Trust* decision. Section 1 states, in its entirety:

> Guarantor absolutely, unconditionally and irrevocably guarantees and promises to the lender: (i) the prompt, complete and full payment and performance when due (whether at the stated maturity, by acceleration or otherwise) of Borrower's Recourse Obligations; and (ii) in addition to all other amounts due hereunder**,** the prompt, complete and full payment, upon demand, of all attorneys' fees, costs, and expenses (including, without limitation, the allocable fees and costs of Lender's staff attorneys), and all other costs and expenses incurred by Lender in enforcing any rights or remedies under or otherwise in connection with this Guaranty or any of the Loan Documents (including in the context of any bankruptcy, reorganization, receivership, or other proceedings affecting creditors'

> rights and involving a claim under this Guaranty or any of the Loan Documents.) All obligations of Borrower described in clauses (i) and (ii), above, are referred to herein collectively as the "**Obligations**." All amounts due, debts, liabilities and payment obligations described in clauses (i) and (ii), above, are referred to herein as **"Indebtedness."**

(Guaranty, Doc. No. 1-1.) (emphasis added). As the Court noted in its previous Order, the Court reads this definition of "Indebtedness" pursuant to the canon of *reddendo singula singulis*, or the doctrine of the last antecedent, under which a limited or restrictive clause (here, the phrase "described in clauses (i) and (ii)") is generally construed to refer to the immediately preceding clause (here, "payment obligations"). Thus, the Court reads Section One as defining indebtedness broadly as "all amounts due, debts, liabilities" in addition to "payment obligations described in clauses (i) and (ii)." (Order at 6 n.1.) *See Barnhart v. Thomas*, 540 U.S. 20, 26–28 (2003); *Sobranes Recovery Pool I, LLC v. Todd & Hughes Const. Corp.*, 509 F.3d 216, 223 (5th Cir. 2007); *Derwen Res., LLC v. Carrizo Oil & Gas, Inc.*, 09-07-00597-CV, 2008 WL 6141597 (Tex. App.—Beaumont May 21, 2009, pet. denied) ("The doctrine of last antecedent is one of the basic rules of grammatical construction."); *Stewman Ranch, Inc. v. Double M. Ranch, Ltd.*, 192 S.W.3d 808, 812 (Tex. App.—Eastland 2006, pet. denied). As the Fifth Circuit has explained, "indebtedness" is a legal term which describes the state of being in debt, *Resolution Trust*, 958 F.2d at 1320 (citing Black's Law Dictionary 691 (6th ed. 1990)), and "indebtedness" may remain even if the debtor can no longer be held liable for it because of non-recourse provisions. *Id.* The Court finds no reason to read the phrase "described in clauses (i) and (ii), above" to modify each noun in the enumerated list. Reading the phrase that way would make "Obligations" and "Indebtedness" synonymous within the terms of this contract, even though they are clearly given separate definitions by utilizing different language and referenced

separately throughout the contract. Thus, the doctrine of the last antecedent applies, and the Court finds that, as a matter of law, "Indebtedness" incorporates the full amount due on the Note.

However, the contract is ambiguous as to whether Defendant guaranteed this Indebtedness. On one hand, Indebtedness is expressly defined in section 1, the expression of what Guarantor promises to Lender. In subsection (ii) of that section, Guarantor promises to pay "attorneys' fees, costs and expenses . . . incurred by Lender in enforcing any rights or remedies under or otherwise in connection with this Guaranty or any of the Loan Documents," in addition to "all other amounts due hereunder." Plaintiff argues that this invocation of "all other amounts due hereunder" incorporated the entirety of the balance on the Note. The Court agrees that this is a reasonable interpretation, but not the only one.

On the other hand, Defendant argues that, in the Guaranty, he did not explicitly agree to assume the full debt on the Note. Rather, the Guaranty is entitled "Guaranty of Borrower's Recourse Obligations," and it states that Guarantor agrees to those payments enumerated in subsections (i) and (ii). It is unclear whether, by reference to the "Indebtedness" in section 1, Defendant was promising to pay the full Indebtedness, including the deficiency on the Note. Unlike the guaranty in *Resolution Trust*, this guaranty does not clearly "require[] the defendant[] to pay the 'indebtedness.'" *Resolution Trust*, 958 F.2d at 1320.

Accordingly, the Court finds the Guaranty ambiguous on this point. The parties have presented conflicting evidence on the parties' intent, including Defendant's previous admission that he was liable for the full amount of the Note (Doppelt Depo., Pl.'s Mot. Summ. J. Ex. C, Doc. No. 21-1, at 252–53), and Citibank's representation that "[t]he Guarantor is obligated to pay all or the applicable portion of the Indebtedness *upon the occurrence of certain specified events* pursuant to the terms of [the Guaranty]." (Letter, Surreply to Pl.'s Mot. Summ. J. Ex. B,

Doc. No. 57-2, at CITI 000138.) The Court must deny Plaintiff's Motion for Summary Judgment due to this issue of fact.

In making this determination, the Court does not rely on the expert report offered by Defendant's witness, Mr. Randall S. James. Interpretation of an unambiguous contract is a question of law for courts, *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996), and thus the Court cannot consider expert testimony in making the determination that the contract is ambiguous. *See Sheet Metal Workers, Int'l Assn., Local Union No. 24 v. Architectural Metal Works, Inc.,* 259 F.3d 418, 424 n.4 (6th Cir.2001) ("[T]he construction of unambiguous contract terms is strictly a judicial function; the opinions of percipient or expert witnesses regarding the meaning(s) of contractual provisions are irrelevant and hence inadmissible.") Courts have recognized an exception to this rule for terms having specialized trade usage, but Mr. James does not purport to express an opinion on any such terms. *See Sparton Corp. v. U.S.,* 77 Fed. Cl. 1, 8 (Fed. Cl. 2007) ("In the absence of specialized trade usage, expert testimony regarding proper contract interpretation is inadmissible, as is expert testimony regarding the legal significance of the contract language."); *North Am. Specialty Ins. Co. v. Myers,* 111 F.3d 1273, 1281 (6th Cir. 1997) (quoting *TCP Indus., Inc. v. Uniroyal, Inc.,* 661 F.2d 542, 549 (6th Cir. 1981)) ("Absent any need to clarify or define terms of art, science, or trade, expert opinion testimony to interpret contract language is inadmissible."). Fifth Circuit caselaw is consistent with this interpretation, and has not recognized any additional exceptions. *See Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*, 662 F. Supp. 2d 623, 668–69 (S.D. Tex. 2009); *Kona Tech. Corp. v. S. Pac. Transp. Co.,* 225 F.3d 595, 611 (5th Cir. 2000) (expert testimony properly admitted to interpret contract provisions having a specialized meaning in the industry); *Coregis Insurance Co. v. Bell,* 1999 WL 244097 (E.D. La. April 21, 1999), *aff'd* 203

F.3d 828 (5th Cir. 1999) (trial court rejected use of English language expert to interpret contract provisions, noting that "there is no need to clarify any terms of art, science or trade" (citing *North Am. Speciality*, 11 F.3d at 1281)); *Phillips Oil Co. v. OKC Corporation,* 812 F.2d 265, 279–80 (5th Cir.) *cert. denied,* 484 U.S. 851 (1987) (affirming trial court's admission of expert testimony because provisions at issue had a specialized usage and meaning within the oil and gas industry).

To the extent Defendant is also offering this report in order to qualify Mr. James to testify as an expert at trial, the report must be struck in its entirety. For the same reasons as those enumerated above, this report would not be helpful to the trier of fact. Mr. James offers no opinions regarding the intent of the parties, which will be the primary issue for the trier of fact with respect to this contract. While Defendant states that "James's expert opinion on banking and lending policies, which clarifies the context of the Guaranty," are relevant and helpful, Mr. James does not actually testify about any banking and lending policies. Instead, he offers only his opinion of the interpretation of the relevant contracts and complaint, without explaining any banking and lending policies that lead him to this determination. (James. Aff. ¶¶ 6–8.)

### 2. Damages

Defendant moves for summary judgment on the basis that damages cannot be calculated at this time. He asserts that damages in this case must be reduced by the amount Plaintiff recovers in the pending lawsuit against Lexington Insurance Company over insurance proceeds from damage to the property caused by Hurricane Ike. (*839 East 19th Street, LP v. Lexington Ins. Co.*, S.D. Tex., Civ. A. No. 4:10-cv-1181.) Defendant does not dispute JRG's calculation of a current deficit of $2,901,047.20 on the Note, except to the extent that the credit for Hurricane Ike

insurance proceeds is not included. Nevertheless, he asserts that this case should be dismissed for lack of ripeness.

Defendant cites no cases which convince the Court that this damages dispute renders the case unripe for decision. Even if the ongoing nature of the other case could affect the ripeness of the damages claims, it appears that the parties have reached a final settlement in the *Lexington Ins.* case. (*See* Joint Stipulation of Dismissal, Doc. No. 170, *839 East 19th Street, LP v. Lexington Ins. Co.*, S.D. Tex., Civ. A. No. 4:10-cv-1181.) Neither party has informed this Court of this settlement or its effect on this case.

The Court finds that there is an issue of material fact with respect to damages, and this uncertainty requires the Court to deny the Motion for Summary Judgment rather than dismiss Plaintiff's claims.

### C. Amendment to Pleadings

In his Sur-Reply to Plaintiff's Motion for Summary Judgment, Defendant asserts that he desires to bring Citibank into the case as a responsible third party, arguing that Citibank's breach of contract is the sole cause of Defendant's liability in this case. The primary purpose of this argument was to assert new grounds for denial of Plaintiff's Motion. (Surreply to Pl.'s Mot. Summ. J. at 6.) To the extent Defendant was attempting to move for leave to amend, the request is denied without prejudice. Defendant must file a proper motion addressing the relevant standards for leave to amend and allow Plaintiff the opportunity to respond.

## IV. CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss is **DENIED**; Plaintiff's Motion for Final Summary Judgment is **DENIED**; Defendant's Motion for Final Summary Judgment is **DENIED**; and Plaintiff's Motion to Strike is **GRANTED**.

**IT IS SO ORDERED**.

**SIGNED** in Houston, Texas, on this the 28th day of June, 2012.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE